## Case No. 11,157.

### PIERSON v. ELGAR et al.

[4 Cranch, C. C. 454.] [1]

Circuit Court, District of Columbia. March Term, 1834.

MILL PRIVILEGES — SURRENDER — PRESCRIPTION— INJUNCTION.

1. Notley Young, at the time of his death, had, and the complainant claiming under him had, a right to the water privilege attached to his mill in the city of Washington; but the complainant lost it by rebuilding the mill on a new site; and by cutting a new race, taking the water out higher up, the right of the public to the streets having intervened before the rebuilding and change of location of the mill.

2. No prescription runs against a public right, nor is the possession and use for twenty years, evidence of a grant from the United States.

3. The court will not grant an injunction to prevent the water from being diverted from its natural course, unless serious damage, actually incurred or impending, be shown; but the party complaining will be left to his remedy at law.

[This was a bill in equity by Joseph G. Pierson against Joseph Elgar and G. Ennis.]

Motion to dissolve an injunction which had been granted by the chief judge, out of court, to prevent the defendant, Elgar, the commissioner of the public buildings, from laying water pipes through the complainant's lots in the city of Washington, and to prevent him from taking water, for the capitol, from a spring which supplied water to the complainant's mill in Washington.

Mr. Jones and R. S. Coxe, for complainant. Mr. Key, for defendants.

Before CRANCH, Chief Judge, and THRUSTON, Circuit Judge.

THE COURT (MORSELL, Circuit Judge, not sitting in the cause) dissolved the injunction.

CRANCH, Chief Judge, after stating the substance of the bill and answers, the orig-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

inal deeds of trust, the proceedings of the commissioners, and the act of Maryland of 1791. c. 45, and the arguments of the counsel, said: I am, therefore, of opinion, that Mr. Young, at the time of his death, had, and those claiming under him, have, a right to the water privilege attached to the mill, and that they cannot be deprived thereof, for the benefit of the public, without just compensation. This opinion, however, applies to the mill as it was on the 18th of November, 1796, when it was allotted to Mr. Young by the commissioners, and when he became seized of, and held the same in his former estate and interest. It is still to be considered whether it applies to the present mill and the new race. If the new mill had been erected on the old site, and the old race had remained, it would have been entitled to the old water right, as appears by Luttrel's Case, 4 Coke, 86.

It is admitted by the complainant, in his bill, that immediately after his purchase of the mill from Mrs. Casanave, which was in May, 1811, he commenced, and in the following year completed, extensive alterations in the mill and its appendages. That he rebuilt the mill, which was removed from about ten to twenty feet above its former site; and at the same time cut a new race, taking the water out of the eastern branch of the Tiber, higher up than before. By thus abandoning the old site of the mill, and the old race, and taking the water out of the Tiber at a different place, it seems to me that the complainant has lost the prescriptive right to the water which he held under Mr. Young; and if he has now any right to conduct the water to his present mill, it must depend upon his ownership of the land contiguous to the Tiber, below the place where he takes the water out of its natural channel, and of the land through which the race passes, or upon actual or presumed grants from the owners of such land. The complainant has not shown himself to be the owner of all the land through which the Tiber passes between the place where the mill water is taken out, and the place where it is returned into the Tiber; nor of the whole of the land through which the race passes; nor has he shown actual grants from the owners of such land. But he relies upon the presumption of such a grant arising from twenty years uninterrupted occupation and use of the water without objection or complaint. This use and occupation began in 1811 or 1812, long after the ground, through which the new race runs, was laid out into a city with streets, lots, squares, and parcels, and after they were marked and bounded on the land itself. The public had acquired rights against which no prescription could run. 2 Rolle, Abr. 265, "Prescription" E. By the common law, the rule is "nullum tempus occurrit regi," as to all public rights; and the reason of the rule was the presumption that the king is daily employed in the weighty affairs of the government, and cannot always be on the watch, to guard the public interests at all points. Hence the rule "vigilantibus, non dormientibus jura subveniunt." does not apply to him. Hob. 347. And as the rule of evidence which presumes a grant after twenty years uninterrupted enjoyment of an incorporeal hereditament is founded upon the presumed acquiescence of him whose right would be abridged by such enjoyment if the occupant had no grant, and who had notice of such occupancy, with the legal ability to prevent it; the rule cannot apply to him who is not bound or not able to watch his rights, or redress his wrongs. Hence it is that there can be no occupant against the king. Co. Litt. 41b. That no presumption of a grant arises against a reversioner, by twenty years occupancy as against the tenant for life; or in the case of glebe lands, where occupation, as against the incumbent, cannot affect the right of his successor. In the present case, the public, having had a right to the streets before the complainant constructed his present mill and race, his use and occupation, for twenty years, is no evidence of a grant of right to conduct the water through, over, or across the streets; and if he has no such right and cannot bring the water to his mill without crossing a public street, he can have no right to an injunction to prevent the public from using the water which he has no right to bring to his mill. But the complainant also claims a right to an injunction to prevent the abstraction of the water from the spring, because he is the proprietor of city lots through which the water of the spring flows in its natural course. Whatever his right to the natural flow of the water may be in consequence of his ownership of some of the city lots through which it would naturally flow; and whatever may be his right of action at law for the abstraction of a portion of that water, without showing actual damage thereby, yet, in order to justify an injunction there must be shown serious damage either incurred or impending. No such damage having been averred as resulting or apprehended from the mere abstraction of a portion of the water, so far as the complainant's proprietary right to a part of the natural bed of the stream is affected, the complainant must be left to his remedy at law. Another ground of complaint is that the defendants either had laid or were about to lay, water pipes through the land of the complainant without his authority. It does not appear by the bill whether the pipes were actually laid, at the time of filing the bill; but it appears, by the answer of Mr. Noland, the successor of Mr. Elgar, (if it is to be received as an answer,) that the whole work was completed before the bill was filed; and by the answer of Mr. Ennis that it was completed before the injunction was served. But whether the pipes were laid, or not, before the service of the injunction, if that had been the only cause of complaint it would hardly have supported an injunction as the actual injury by laying the pipes through the complainant's

land, could not be very great, and certainly might be compensated in damages by an action at law. This ground alone does not seem sufficient to sustain the injunction. The injunction is dissolved. And the cause being, by consent, set for final hearing on the bill, answers, and exhibits, the bill is dismissed.